UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| PAMELA A. BLANKENSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:21-cv-00151-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Kilolo Kijakazi,* | ) | |
| *Acting Commissioner of the Social* | ) | |
| *Security Administration,*[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Pamela A. Blankenship appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). Because at least one of Blankenship's arguments is persuasive, the Commissioner's final decision will be REVERSED and the case REMANDED for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Blankenship applied for DIB in February 2019, alleging disability since December 20, 2018. (ECF 12 Administrative Record ("AR") 14, 142-43). Blankenship's claim was denied initially and upon reconsideration. (AR 54-71). On September 21, 2020, administrative law judge ("ALJ") Genevieve Adamo held an administrative hearing at which Blankenship, who was represented by counsel, and a vocational expert ("VE") testified. (AR 28-53). On October 28,

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

2020, the ALJ rendered an unfavorable decision to Blankenship, concluding that she was not disabled because she could perform her past relevant work as an Office Manager as generally performed. (AR 11-22). The Appeals Council denied Blankenship's request for review (AR 1-3), at which point the ALJ's decision became the final decision of the Commissioner, 20 C.F.R. § 404.981.

Blankenship filed a complaint with this Court on April 20, 2021, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Blankenship alleges that the ALJ erred by: (1) "failing to properly assess [her] neurogenic claudication, stocking-type neuropathy, and other conditions, including in combination, and fail[ing] to properly incorporate them into [the] residual functional capacity"—which the Court interprets as challenging both the ALJ's conclusion at step three that Blankenship's conditions did not meet or equal a listing and the assigned physical RFC; and (2) failing to properly analyze her handling and fingering ability. (ECF 21 at 4, 9-17).

At the time of the ALJ's decision, Blankenship was sixty-one years old and had obtained her GED. (AR 54, 172). Blankenship had past relevant work as an office manager, cashier, and store laborer. (AR 22; *see* AR 172, 191). When filing her DIB application, Blankenship alleged disability due to issues with her back and legs. (AR 171). At the hearing, Blankenship also testified to manipulative and handling problems in her upper extremities due to carpal tunnel syndrome and osteoarthritis. (AR 38-41, 45-46).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On October 28, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 11-22). At step one, the ALJ found that Blankenship had not engaged in substantial gainful activity since her alleged onset date, December 20, 2018. (*Id.*). At step two, the ALJ determined that Blankenship had the following severe impairments: bilateral carpal tunnel syndrome; bilateral cubital tunnel syndrome; obesity; bilateral osteoarthritis of the hands; lumbar degenerative disc disease; and peripheral neuropathy. (*Id.*). At step three, the ALJ concluded that Blankenship did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 17).

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

>Before proceeding to step four, the ALJ assigned Blankenship the following RFC:
>
>[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) subject to the following additional limitations: The claimant should never climb ladders, ropes or scaffolds. She is able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl on an occasional basis. She is able to perform frequent handling and fingering[.]

(AR 18). Based on the assigned RFC and the VE's testimony, the ALJ found at step four that Blankenship was able to perform her past relevant work as an office manager as generally performed. (AR 21-22). Accordingly, the ALJ did not reach step five and Blankenship's application for DIB was denied. (AR 22).

### C. Listing 1.04(A)

Blankenship contends that the "[t]he ALJ improperly analyzes, in multiple respects, [her] ability to do a great deal of standing and walking." (ECF 21 at 9). In particular, Blankenship attacks the ALJ's determination there was "no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss or positive straight-leg raising test (sitting and supine), as required by [listing] 1.04(A)" despite there being evidence in the record of thecal sac abutment and diagnoses of spinal stenosis. (*Id.* (citing AR 17, 285, 495, 530, 532, 542, 551)). She further faults the ALJ for describing her back pain as "mostly mechanical," contending that it amounts to "play[ing] the role of doctor." (*Id.* at 9-10 (citing AR 20)). Finally, Blankenship argues that the ALJ should have limited her to sedentary work which—when considered in conjunction with her age, education, and skill level—she contends would make her automatically disabled if the ALJ had relied on the grid rules. *See* 20 C.F.R. Part 404, subpt. P, app. 2, 201.06. (ECF 21 at 12-14). Ultimately,

5

Blankenship's first argument with respect to listing 1.04(A) necessitates a remand of this case, and thus, the Court need not reach her remaining arguments.

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id*. (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The claimant bears the burden of proving her condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380. Having said that, "an ALJ should mention the specific listings [she] is considering and [her] failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The criteria of listing 1.04(A) was:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04.[1]

Here, the ALJ briefly addressed listings 1.04, disorders of the spine, and 1.02, major dysfunction of a joint due to any cause, asserting that:

> [T]he evidence does not show involvement of one major peripheral joint in each upper extremity resulting in an inability to perform fine and gross movements effectively. Likewise, the evidence does not show an inability to ambulate effectively for 12 months or more, as required by sections 1.02(A) or 1.04(C). No record indicates the use of an assistive device was prescribed or medically necessary. The claimant typically presents with a normal gait. Further, there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss or positive straight-leg raising test (sitting and supine), as required by section 1.04(A).

(AR 17).[2] But this analysis merely recites the criteria of listing 1.04(A), which is "the very type of perfunctory analysis the Seventh Circuit [Court of Appeals] has repeatedly found inadequate to dismiss an impairment as not meeting or equaling a listing." *Jonie G. v. Saul*, No. 18 CV 50100, 2019 WL 6716610, at *3 (N.D. Ill. Dec. 10, 2019) (citation and internal quotation marks omitted) (characterizing the ALJ's step-three analysis as perfunctory where the ALJ merely recited the criteria of each listing and stated that the plaintiff's impairments failed to meet each criteria of the listing); *see also Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015).

Furthermore, the ALJ's own statements elsewhere in her decision contradict her step-three analysis. When assigning the RFC, the ALJ observed that "[p]hysical examinations note some abnormality, but this is limited to reduced lumbar range of motion, mildly diminished

---

[1] Listing 1.04(A) has since been incorporated into Listing 1.15. *See, e.g.*, *McPherson v. Kijakazi*, No. 1:20CV710, 2021 WL 5889988, at *5 n.6 (M.D.N.C. Dec. 13, 2021) (R. & R.) (citing Rescission of Acquiescence Ruling 15-1(4), 85 FR 79063, 2020 WL 7209986 (Dec. 8, 2020)).

[2] Blankenship does not attack the ALJ's decision as to listing 1.02 or 1.04(C) with any specificity, and as a result, any argument to that effect is waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

reflexes, reduced sensation in the bilateral lower extremities, and occasional spinal tenderness." (AR 20 (citing AR 248, 331, 373-74, 385, 419-20, 426, 436, 450, 492, 600, 608, 617-18, 622-23, 627)). This evidence is relevant to the requirements of listing 1.04(A), necessitating a more in-depth analysis by the ALJ at step three. *Richards v. Saul*, No. 1:19-cv-153-PPS, 2020 WL 2190636, at *2 (N.D. Ind. May 6, 2020) ("Treatment notes show that [the claimant] had limited range of motion in his lumbar spine and lower extremities; motor loss indicated by extremity weakness and atrophy; and absent and diminished reflexes in the lower extremities. All of these findings could support the elements of Listing 1.04(A) and therefore require a more in depth analysis at step three." (citations omitted)).

Also, the ALJ fails to mention the treatment notes of Blankenship's physician, Thomas Lazoff, M.D., who after reviewing Blankenship's 2015 MRI, noted that her "[s]tenosis [was] fairly significant and impinging upon the L5 nerve roots." (AR 278, 470, 551). While a later MRI in 2017 did not show signs of severe stenosis (*see* AR 493), multiple treatment notes in the record document lumbar radiculopathy, which is also arguably relevant to listing 1.04(A) (*see, e.g.*, 247, 250, 255, 261-62, 265, 269-70, 307, 312, 315, 414, 426, 430, 453, 456, 462, 471, 473, 514, 527, 532-33, 545); *see also Wyatt v. Colvin*, No. 13CV1972-WQH-NLS, 2014 WL 3501974, at *3 n.4 (S.D. Cal. July 14, 2014) ("Lumbar radiculopathy is the compression or inflammation of the spinal nerve root that may cause pain, numbness, or weakness." (citation omitted)); *Pereira v. Astrue*, 279 F.R.D. 201, 203 n.4 (E.D.N.Y. 2010) ("Lumbar Radiculopathy is a compression and irritation of nerve roots in the lumbar region, with resultant pain in the lower back and lower limbs." (citation omitted)). But despite "[t]his diagnosis provid[ing] at least some evidence of nerve root compression," *Snider v. Colvin*, No. 14-CV-1249, 2015 WL 4180889, at *8 (C.D. Ill. July 10, 2015), the ALJ only addresses it in the context of the April 4,

2019, report of consultive examiner Ralph Inabnit, D.O. (AR 20-21). Even then, though, the ALJ only considered Dr. Inabnit's report—which noted chronic lower back pain, lumbar spondylosis, spinal stenosis of the lumbar spine, and lumbar radiculopathy by history (AR 312)—persuasive for the purposes of establishing whether Blankenship's impairments were severe (AR 20-21). It is not clear, though, whether the ALJ considered this evidence of lumbar radiculopathy or nerve root impingement at step three, and it seems unlikely she did given her assertion that there was "no evidence of nerve root compression . . . ." (AR 17).

Still more, there is at least some—albeit limited—evidence of positive straight leg tests in the record. (*See, e.g.*, AR 274, 278, 465, 470, 547, 551). There is no indication that they were positive in both sitting and supine as required by listing 1.04(A), but because the ALJ does not address this evidence at all, it is not clear whether it was "not credited or simply ignored." *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir. 1984). "While it is often impracticable and fruitless for every document to be discussed separately, an ALJ may not select only the evidence that favors [her] ultimate conclusion." *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984) (citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982)). In other words, "[a]n ALJ cannot rely only on the evidence that supports her opinion." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (citation omitted).

It is true, as the Commissioner points out, that the state agency physicians at the initial and reconsideration level determined that Blankenship did not meet the criteria of listing 1.04. (ECF 22 at 4; *see* AR 54-61, 63-70). But while state agency physician opinions may constitute substantial evidence at step three, *see Aurand v. Colvin*, 654 F. App'x 831, 839 (7th Cir. 2016), "the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation *only* so long as there is no contradictory evidence in the

9

record . . . ." *Ribaudo*, 458 F.3d at 584 (emphasis added). But as discussed *infra*, there is evidence in the record supporting listing 1.04(A), and the ALJ's failure to meaningfully consider it at step three "does not provide much assurance that [she] adequately considered [Blankenship's] case." *Id.* (citing *Brindisi*, 315 F.3d at 786 (criticizing ALJ's failure to discuss conflicting evidence at step three inquiry including the strongest piece of evidence supporting the claimant's case)). In sum, the ALJ's step-three determination is not supported by substantial evidence, and as such remand is necessary.

This is not to say that Blankenship necessarily meets listing 1.04(A). While, as discussed *infra*, the record contains positive straight-leg-raise tests, there is also evidence of negative straight leg tests as well as normal gait and full strength in the lower extremities. (*See, e.g.,* AR 355, 410, 420, 429, 436, 438). Consequently, to the extent Blankenship is requesting an outright award of DIB on this argument (*see* ECF 21 at 14, 17), the Court declines to do so. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citations omitted); *see also Bray v. Astrue*, No. 2:10-CV-00352, 2011 WL 3608573, at *10 (N.D. Ind. Aug. 15, 2011). Here, the record does not "yield but one supportable conclusion" in Blankenship's favor based on listing 1.04(A). *Briscoe ex rel. Taylor*, 425 F.3d at 355. Therefore, on remand, the ALJ should properly consider all of the criteria of listing 1.04(A) (or its revised equivalent) and the evidence relevant thereto, and adequately articulate her analysis of such listing so that her path of reasoning can be easily traced. *See Clifford*, 227 F.3d at 872 ("[W]e must be able to trace the ALJ's path of reasoning.").

As stated earlier, because the Court agrees that the ALJ's reasoning pertaining to listing 1.04(A) is deficient, there is no need to address Blankenship's arguments about the need for

10

additional postural and manipulative limitations in the RFC. However, because the matter is being remanded, the ALJ should address any contradictory evidence suggesting the need for additional limitations in the RFC. Further, because Blankenship did not initially allege manipulative limitations—and as such, the state agency physicians did not render any opinions as to those limitations (*see* ECF 22 at 7)—any additional, objective, medical evidence relevant to manipulative limitations may be submitted to an expert for review. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("[A]n ALJ may not play[ ] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." (citation and internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The clerk is directed to enter a judgment in favor of Blankenship and against the Commissioner.

SO ORDERED.

Entered this 12th day of July 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge